# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS
## Washington, D.C.

### UNITED STATES

v.

### Cedric A. HUGHES
### Lieutenant Commander (O-4), U.S. Coast Guard

### CGCMG 0188

### Docket No. 1196

### 21 May 2004

General Court-Martial convened by Commander, Maintenance and Logistics Command Atlantic. Tried at Arlington, Virginia, on 27 May 2003.

| | |
|---|---|
| Military Judge: | COL Denise K. Vowell, USA |
| Trial Counsel: | LCDR Ronald S. Horn, USCG |
| Assistant Trial Counsel | LT Bryan C. Pape, USCGR |
| Detailed Defense Counsel: | LT Steven Crass, JAGC, USNR |
| Appellate Defense Counsel: | LCDR Nancy J. Truax, USCG |
| Appellate Government Counsel: | LCDR John S. Luce, USCG |

### BEFORE
### PANEL EIGHT
### BAUM, PALMER, & CAHILL
Appellate Military Judges

CAHILL, Judge:

Appellant was tried by general court-martial, military judge alone. Pursuant to a pretrial agreement, Appellant entered pleas of guilty to one specification of dereliction of duty in violation of Article 92, Uniform Code of Military Justice (UCMJ), and one specification of obtaining services under false pretenses and one specification of dishonorable failure to pay a just debt in violation of Article 134, UCMJ. The military judge accepted Appellant's pleas, entered findings of guilty to those offenses, and sentenced Appellant to confinement for 170 days and dismissal from the Coast Guard. Appellant also entered pleas of not guilty to two specifications of forgery in violation of Article 123, UCMJ, and one specification of unauthorized absence in violation of Article 86, UCMJ. The latter charges and specifications

were withdrawn and dismissed with prejudice. The military judge also recommended that the Convening Authority disapprove the dismissal as a matter of clemency. The Convening Authority approved the sentence as adjudged but suspended confinement in excess of forty-five days until 3 July 2004 as required by the pretrial agreement.

Before this Court, Appellant has assigned three errors:

I. Appellant's plea to obtaining services under false pretenses was improvident because the military judge failed to elicit facts sufficient to establish that the false pretenses induced the delivery of services;

II. Appellant's plea to dishonorable failure to pay a just debt was improvident because the military judge failed to elicit facts sufficient to establish that his conduct was dishonorable or to resolve inconsistencies between Appellant's statements and his pleas; and

III. A sentence of dismissal is inappropriately severe.

Oral argument was held on 17 March 2004. After careful consideration, we reject Appellant's claims. We find the findings and sentence to be correct in law and fact and affirm.

**Facts**

Appellant originally enlisted in the Coast Guard in March 1976, and has served continuously on active duty since that date. He attained the rank of petty officer first class and was commissioned as an ensign in March 1988 following completion of Officer Candidate School. At the time of the offenses, he was assigned to the Coast Guard Recruiting Command as Chief, Operations Division, and experienced a number of financial, medical, and other personal problems. Appellant had no prior disciplinary actions, and had received a number of personal awards for performance of duty in prior assignments.

According to a stipulation of fact admitted at trial, Appellant willfully failed to file travel claims or account for over $28,000 in travel advances that he received between January 2000 and April 2002. Some scheduled travel was cancelled after Appellant received an advance, while Appellant performed some of the travel. He acknowledged during the *Care* inquiry that he

received travel advances on approximately fifteen occasions, and was aware of his duty to file travel claims. *United States v. Care*, 18 USCMA 535, 40 CMR 247 (1969).

Appellant's daughter began attending New York University in 2000, and Appellant paid some portion of her tuition and expenses. At some point, Appellant transmitted a letter by facsimile to the New York University Registrar. The letter, which is not a part of the record, was purportedly on Coast Guard Recruiting Command letterhead and signed by a fictitious member of the Recruiting Command staff. It represented that Appellant's daughter was enrolled in a Coast Guard pre-commissioning program and that the Coast Guard had assumed financial responsibility for her education costs. However, Appellant's daughter was not enrolled in any Coast Guard program and the Coast Guard had no responsibility for her educational costs, which amounted to over $54,000 over two semesters. Appellant knew at the time that his representations were false, and he had no intent that the Coast Guard actually make any payments. He indicated that he sent the false letter "as a stopgap" so that the university would allow his daughter to remain enrolled until he obtained sufficient funds to make payment at some point in the future.

Between August 1999 and October 2002, Appellant charged over $14,000 in cash advances to his Citibank Travel Card. Appellant deliberately failed to pay his outstanding balance. He "just filed" the bills as they became due, although he paid approximately $2,000. He "just ignored" the bills, and told Citibank representatives that he was not home when contacted at home by telephone. Appellant admitted that he could have worked out a payment plan with Citibank but failed to do so because he had "lost focus" due to personal problems.

## Discussion

Assignments of error I and II both raise defects or inconsistencies in Appellant's pleas of guilty. To reject a guilty plea on appeal, we must find that the record reveals a "'substantial basis' in law and fact for questioning the guilty plea." *United States v. Prater*, 32 M.J. 433, 436 (C.M.A. 1991).

**Obtaining Services Under False Pretenses**

Appellant pled guilty to wrongfully obtaining services under false pretenses between about 16 July 2001 and 19 April 2002. Appellant asserts that his plea is improvident because the military judge failed to elicit facts sufficient to establish that New York University relied upon Appellant's misrepresentations when it provided educational services to his daughter. At oral argument, Appellant's counsel also contended that the plea was improvident because the record fails to indicate when Appellant sent the letter. Appellant asserts that it is not possible to determine whether the letter was sent before or after the services were provided, or if the services were provided in reliance upon the letter during the period alleged in the specification.

Appellant points to *United States v. Mosely*, in which the Navy and Marine Corps Court of Military Review, in dicta, indicated that the false representations must not only induce delivery of a benefit but must also precede or be contemporaneous with a larceny to constitute larceny by false pretenses. *United States v. Mosely,* 35 M.J. 693, 697 n.10 (N.M.C.M.R. 1993). *Mosely* involved larceny of housing allowances, with the perpetrator submitting false documentation after the allowances were received. However, the Navy and Marine Corps Court also indicated "[A] Court of Military Review must make its decision as to factual sufficiency 'on the basis of the entire record'" and considered a number of evidentiary factors in reversing the conviction. *Mosely,* 35 M.J. at 699.

We turn to the entire record to determine if it supports Appellant's plea of guilty to obtaining services under false pretenses. To find a plea of guilty to be knowing and voluntary, the record of trial "must reflect" that the elements of "each offense charged have been explained to the accused" by the military judge. *United States v. Care*, 18 USCMA 535, 541, 40 CMR 247, 253 (1969). The military judge explained the elements of obtaining services by false pretenses as follows:

> 1) That between about 16 July 2001 and 19 April 2002, the accused wrongfully and unlawfully received certain services, to wit: educational services and lodging from New York University;

2) The services were obtained by falsely pretending to New York University that the Coast Guard would pay for the educational expenses of Appellant's daughter;

3) That Appellant had knowledge that the pretenses were false at the time the services were obtained;

4) That the services were obtained with the intent to defraud;

5) That the services were of a value of about $54,330; and

6) That under the circumstances, Appellant's conduct was to the prejudice of good order and discipline or of a nature to bring discredit upon the armed forces.

The military judge then defined false pretenses, including that the misrepresentation must be "an important factor" in obtaining the services. During a more detailed inquiry, appellant admitted that his daughter began attending New York University in 2000. He paid the portion of her tuition, fees, and expenses that was not covered by financial aid. Appellant was aware of a Coast Guard program under which the Coast Guard would pay educational costs for a person who enlisted in the Coast Guard after the sophomore year of college. However, Appellant's daughter had previously rejected the idea of enlisting in the Coast Guard. Due to pressures from other debts, and knowledge that his daughter would not be allowed to remain in school unless payment was made, he "conjured up a document" that he signed with a false name and sent to the New York University Registrar. The letter falsely represented that the Coast Guard would assume responsibility for his daughter's educational expenses. New York University then allowed his daughter to remain enrolled based upon an expectation of payment from the Coast Guard as falsely represented in Appellant's letter, and provided her with two semesters of educational and lodging services with a value of roughly $54,000. Appellant knew that the Coast Guard would not make any payments. Subsequently, New York University no longer allowed his daughter to attend classes and she could not return until the debt was paid. A stipulation of fact admitted at trial indicated that Appellant wrongfully obtained educational services for his daughter between about 16 July 2001 and 19 April 2002, the same period that was alleged in the specification. The stipulation also indicated that he sent the letter with the intent to defraud, and that "the services of New York University were obtained under false pretenses."

Unlike *United States v. Redlinski* and *United States v. Burris*, the military judge here fully explained each of the elements and defined the applicable terms. *United States v. Redlinski*, 58 M.J. 117 (2003); *United States v. Burris*, 59 M.J. 700 (C.G.Ct.Crim.App. 2004). Appellant asked no questions about the elements or the definitions, and affirmed that his guilty plea was an admission that the elements accurately reflected his conduct. Although including a copy or more specific details about the letter to New York University within the stipulation of fact or eliciting more specificity during the *Care* inquiry would have been helpful, the absence of such additional details does not render his plea improvident. The record adequately demonstrates that the Appellant's letter purporting to be from the Coast Guard was an effective and intentional cause of the delivery of services. Additionally, we do not see any substantial conflicts between his statements at trial and his plea of guilty to this offense. We find there is not a substantial basis in law and fact to question his plea, and we reject this assignment of error.

### Dishonorable Failure to Pay Just Debt

Appellant asserts that his plea to dishonorable failure to pay a just debt was improvident because the military judge failed to elicit facts sufficient to establish that his conduct was dishonorable or to resolve inconsistencies between Appellant's statements. Again, we look to determine if the record reveals a "'substantial basis' in law and fact for questioning the guilty plea." *United States v. Prater*, 32 M.J. 433, 436 (C.M.A. 1991).

In both *United States v. Bullman* and *United States v. Burris*, a guilty plea was overturned because the military judge failed to define the term "dishonorable" as it applied to dishonorable failure to pay a just debt. *United States v. Bullman,* 56 M.J. 377, 382 (2002); *United States v. Burris,* 59 M.J. 700, 703 (C.G.Ct.Crim.App. 2004). In *Bullman*, the Court of Appeals for the Armed Forces reiterated that even negligent failure to pay a debt is not culpable conduct. *Bullman*, 56 M.J. at 381 (citations omitted). Instead, the failure to pay must be "characterized by deceit, evasion, false promises, or other distinctly culpable circumstances indicating a deliberate nonpayment or grossly indifferent attitude." 56 M.J. at 382 (citations omitted). The Court found that the record did not establish that the accused believed his conduct amounted to deceit, evasion, false promises, or other distinctly culpable circumstances. *Id.* at 382. Additionally, a statement that he would have paid if he had funds was inconsistent with the plea to dishonorable

failure to pay. *Id*. at 382. Similarly, in *Burris*, this Court found that the record did not reflect that the accused understood that his nonpayment needed to go beyond negligence and be characterized by deceit, evasion, false promises, or other distinctly culpable circumstances indicating a deliberate nonpayment or grossly indifferent attitude. *Burris,* 59 M.J. at 703.

In the present case, the military judge defined the term "dishonorable" as it applies to non-payment of a debt. She informed Appellant that a dishonorable failure to pay must be more than mere negligence, and must be fraudulent, deceitful, characterized by willful failure, done in bad faith, or result from a grossly indifferent attitude. We are satisfied that the military judge properly informed Appellant of the elements and fully defined the term "dishonorable" as it applied to the charge against him.

Appellant acknowledged his understanding of the elements and definitions as explained by the military judge, and admitted that those elements and definitions taken together correctly described his actions. Appellant also admitted that he "just filed" bills as he received them, and paid "not very many," of them. He admitted that he was "possibly" financially capable of paying his bills and had "no real reasons" for his failure to do so. The military judge informed him that inability to pay was a possible defense, and Appellant affirmatively stated that he "deliberately chose not to pay the bill." He also admitted that he "just ignored" his creditor, and "[I]f they would call, I would tell them I wasn't home, I wouldn't take the call or said I wasn't home." He said there was "nothing standing in the way" of his arranging a payment plan but that he had not done so due to "other personal problems" that caused him to "lose focus." He again stated that he "willingly did not pay the bill" and had "no excuse" for nonpayment.

Again, we do not see any substantial conflicts between Appellant's statements at trial. Although Appellant paid approximately $2,000 toward an outstanding balance of over $14,000, we do not find that his partial payment rises to the level of a defense to dishonorable failure to pay the balance. His statements indicate conduct that involved deceit, was more than mere negligence, and reflected, at a minimum, a grossly indifferent attitude. We find there is not a substantial basis in law and fact to set aside his plea of guilty to this offense, and we reject this assignment of error as well.

**Appropriateness of Sentence of Dismissal**

Appellant asserts that a sentence of dismissal is inappropriately severe for the offenses of which he was convicted. Although this issue was not specified for oral argument, both appellate government and appellate defense counsel were asked to address it during argument. We agree that dismissal of a commissioned officer is severe punishment, but we do not believe it is inappropriately severe in this case despite Appellant's lengthy service and the significant collateral consequences accompanying such a sentence.

As this Court recently noted in *United States v. Isaac*, military officers hold special positions of honor and are held to a high standard of accountability. *United States v. Isaac*, 59 M.J. 537, 538 (C.G.Ct.Crim.App. 2003), (citing *United States v. Means*, 10 M.J. 162, 166 (C.M.A. 1981)). In the present case, Appellant's willful conduct over an extended period of time failed to demonstrate honor or live up to that high standard of accountability. He repeatedly failed to properly discharge his military duties and misused tools given to him for his personal benefit. He misused his knowledge of Coast Guard recruiting programs to falsely represent that the Coast Guard had assumed financial responsibility for his daughter's educational expenses. We decline to modify the sentence as adjudged and approved below.

**Conclusion**

We have reviewed the record in accordance with Article 66, UCMJ. Upon such review, the findings and sentence are determined to be correct in law and fact and, on the basis of the entire record, should be approved. Accordingly, the findings of guilty and the sentence as approved below are affirmed.

Judge PALMER concurs.

Chief Judge BAUM concurs in part and dissents in part:

I concur with the rejection of Appellant's first and second assigned errors. I am satisfied that the providence of Appellant's pleas has been established by the record in this case. I dissent, however, from the rejection of Appellant's contention in his third assignment that a dismissal is

inappropriately severe.  I am convinced by certain aspects of this case that a dismissal should not be approved.  Appellant has twenty-eight years of active duty service in the Coast Guard and is eligible for retirement.  With all that he will lose if separated with a dismissal, I have given special attention to the circumstances surrounding the offenses and the state of his health.  Judge Cahill notes that at the time of the offenses, Appellant had experienced a number of financial, medical, and other personal problems.   Chief among those, in my view, is his diagnosis as HIV positive and the psychological impact that can follow from that condition.  Judge Cahill also points out that Appellant had no previous disciplinary actions, and had received a number of personal awards for performance of duty in prior assignments.  Most importantly, when assessing the punishment warranted by the offenses, I have given great weight to the military judge's recommendation that the Convening Authority consider disapproving the dismissal as an act of clemency.  All of these factors have convinced me that in meeting our responsibilities under Article 66, UCMJ the dismissal should be set aside.



For the Court,


Roy Shannon Jr.
Clerk of the Court