# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
TOZZI, CELTNIEKS, and BURTON
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private First Class ERIK J. CARTER**
**United States Army, Appellant**

ARMY 20150592

Headquarters, Fort Bragg
Christopher T. Fredrikson, Military Judge
Lieutenant Colonel Jerrett W. Dunlap, Jr., Staff Judge Advocate (pretrial)
Colonel Jeffrey C. Hagler, Staff Judge Advocate (post-trial)

For Appellant:  Captain Michael A. Gold, JA; Mr. Jeffrey S. Stephens, Esquire (on brief).

For Appellee:  Colonel Mark H. Sydenham, JA; Lieutenant Colonel A.G. Courie III, JA; Major Michael E. Korte, JA; Captain Austin L. Fenwick, JA (on brief).

30 June 2017

----------------------------------
SUMMARY DISPOSITION
----------------------------------

Per Curiam:

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of false official statement, sexual assault, and abusive sexual contact, in violation of Articles 107 and 120, Uniform Code of Military Justice, 10 U.S.C. §§ 907, 920 (2012 & Supp. I 2014) [hereinafter UCMJ].  The military judge sentenced appellant to a bad-conduct discharge, confinement for thirty months, and reduction in grade to E-1.  Pursuant to the terms of his pretrial agreement, the convening authority only approved the bad-conduct discharge, confinement for twenty-four months, and reduction in grade to E-1.

This case is before the court for review under Article 66, UCMJ.  Appellant assigns four errors on appeal.  Two of appellant's assigned errors, regarding the providence of his pleas and the effectiveness of his defense counsel, merit discussion but no relief.  Appellant also raises matters pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), which are without merit.

**LAW AND DISCUSSION**

We review a military judge's decision to accept a guilty plea for an abuse of discretion. *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008). A guilty plea will only be set aside if we find a substantial basis in law or fact to question the plea. *Id.* (citing *United States v. Prater*, 32 M.J. 433, 436 (C.M.A. 1991)). The court applies this "substantial basis" test by determining whether the record raises a substantial question about the factual basis of appellant's guilty plea or the law underpinning the plea. *Id. See also* UCMJ art. 45(a); Rule for Courts-Martial [hereinafter R.C.M.] 910(e). "For this [c]ourt to find a plea of guilty to be knowing and voluntary, the record of trial must reflect that the elements of each offense charged have been explained to the accused by the military judge." *United States v. Schell*, 72 M.J. 339, 345 (C.A.A.F. 2013) (quoting *United States v. Redlinski*, 58 M.J. 117, 119 (C.A.A.F. 2003) (internal quotations omitted); *see also United States v. Care*, 18 U.S.C.M.A. 535, 541, 40 C.M.R. 247, 253 (1969); UCMJ art. 45(a); R.C.M. 910(c)(1). "'Rather than focusing on a technical listing of the elements of an offense, this [c]ourt looks at the context of the entire record to determine whether an accused is aware of the elements, either explicitly or inferentially.'" *Schell*, 72 M.J. at 345 (quoting *Redlinski*, 58 M.J. at 119). "If the military judge fails to explain the elements to an accused, it is reversible error unless 'it is clear from the entire record that the accused knew the elements, admitted them freely, and pleaded guilty because he was guilty.'" *Id.* at 345 (quoting *United States v. Jones*, 34 M.J. 270, 272 (C.M.A. 1992)).

After a careful review of the record as a whole, including appellant's stipulation of facts, we do not find a substantial basis in law or fact to reject appellant's pleas. The military judge properly recited the elements of the offenses and defined "sexual act" and "sexual contact" within that context. In addition, the military judge defined the anatomical terms "vulva" and "labia" as they related to the charged sexual act. Although the military judge failed to further define "consent" and "incapable of consent," "it is clear from the entire record that [appellant] knew the elements, admitted them freely, and pleaded guilty because he was guilty." *Jones*, 34 M.J. at 272.

During the providence inquiry, appellant admitted that both "[b]efore and during the sexual encounter [the victim] was too drunk to consent." While this conclusory statement alone would have been insufficient to support his pleas, appellant went on to explain the basis for his conclusion. First, appellant saw his victim "consume a lot of alcohol" that evening. Second, he observed the physical effects of his victim's intoxication and impairment. Specifically, appellant recounted to the military judge how his victim "was showing symptoms of being drunk," such as "talking slower [and] stumbling around[,]" and "[a]s time went on her eyes became droopy and *she seemed out of it, like she really didn't know what*

*was going on*."* (emphasis added). Third, appellant admitted to removing his clothes and his victim's clothes (apparently without the victim's assistance), and disclaimed any activity on the victim's part that led him to believe she consented to the sexual encounter. This explanation not only shows the various reasons why appellant concluded his victim was unable to consent, but also illustrates his proper understanding that "incapable of consent" meant his victim lacked the cognitive ability to appreciate the sexual conduct in question (i.e., "she really didn't know what was going on").

Moreover, appellant's colloquy with the military judge was supported by a stipulation of fact in which he described how his victim repeatedly and emphatically rebuffed his numerous sexual advances early the same evening. Appellant also admitted his victim "went to bed alone in an unoccupied bedroom" before he went in the bedroom a few moments later. Shortly thereafter, appellant's offenses were interrupted by repeated demands to open the bedroom door by other occupants of the apartment. In response:

> [appellant] cracked open the door only exposing his face to get them to leave. However, Mrs. Hudler asked to speak with [the victim]. [Appellant] called to [the victim], and when she did not immediately respond, Mrs. Hudler entered and rushed to the aide of [the victim] who only had a shirt on at the time and no pants or underwear. [Appellant] grabbed his shirt and exited the room when Mrs. Hudler entered. Mrs. Hudler *physically shook* [the victim] *who appeared confused and out of it* when Mrs. Hudler then tried to ask her what was going on. Mrs. Hudler asked her if she was having sex with the [appellant], to which she told Mrs. Hudler "no."

(emphasis added).

In light of the above, we find appellant articulated and admitted facts that demonstrate a proper understanding of the offenses to which he pleaded guilty. We find, therefore, appellant's pleas were knowing, intelligent, and voluntary. Accordingly, we find no substantial basis in law or fact to reject appellant's pleas,

---

* As the providence inquiry continued, appellant also explained his level of intoxication, which provides an important contrast to his victim's level of intoxication. Appellant said he was drunk at the time of the offenses. However, even with his level of intoxication, he was admittedly still able to understand what he was doing and to recognize his victim's inability to do the same.

nor do we find an abuse of discretion on the part of the military judge in accepting appellant's pleas.

Turning to the assertion of ineffective assistance of counsel, we find no need to order affidavits from counsel or a factfinding hearing pursuant to *United States v. DuBay*, 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967). Instead, after applying the first, second, fourth, and fifth principles articulated in *United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997), we conclude appellant's claims of ineffective assistance of counsel are without merit.

First, we disregard all "speculative or conclusory observations" in appellant's affidavit. *See id.* ("[I]f the affidavit does not set forth specific facts but consists instead of speculative or conclusory observations, the claim may be rejected on that basis."). Instead, we look only at those factual allegations in appellant's affidavit that he is competent to offer. Second, we further disregard those portions of appellant's affidavit where "the appellate filings and the record as a whole 'compellingly demonstrate' the improbability of those facts . . . ." *Id.* Third, we also disregard the asserted facts in appellant's affidavit that, even if true, are irrelevant or would not merit relief. *See id.* ("[I]f the facts alleged in the affidavit allege an error that would not result in relief even if any factual dispute were resolved in appellant's favor, the claim may be rejected on that basis."). Lastly, absent a rational explanation why appellant's sworn testimony during his guilty plea contradicts his affidavit on appeal, we decide this case based on the record of trial. *See id.* (permitting courts to decide claims of ineffective assistance based on the record of trial—including the admissions during the plea inquiry and expressions of satisfaction with counsel—when an appellant contradicts his guilty plea on appeal without a rational explanation why he would have made such statements at trial but not upon appeal).

After stripping from appellant's affidavit all allegations that are speculative, conclusory, irrelevant, and would not result in relief, what is left is a series of statements that are compellingly contradicted by the record without a rational explanation for the contradiction. For example, appellant claims his counsel:

> were defective by advising me of "examples" of acceptable traits that a victim *might* exhibit to demonstrate incapacity to consent due to intoxication, including "stumbling", "slurred speech" and "droopy eyes". *I did not observe these traits in the alleged victim* in this case since she was responsive to me and we were both highly intoxicated, but *I merely provided the military judge with the same, highly clinical, language given to me by my counsel.*

4

(emphasis added). However, the record compellingly demonstrates that appellant did more than "merely" provide the military judge with "highly clinical[] language" about "examples" of incapacity due to intoxication a person *might* display to prove he understood the elements of the charged offenses. Instead, appellant described signs of incapacity his victim *in fact* displayed based on his personal observations in plain, non-technical terms (e.g., the victim "seemed out of it, like she didn't really know what was going on" and she "appeared confused and out of it" at the time of the offenses). Appellant's minimization of his sworn testimony to the military judge and his signed stipulation of fact is compellingly contradicted by the record. Moreover, appellant repeatedly assured the military judge that he was convinced his victim was incapable of consenting at the time of the offenses and was fully satisfied with the assistance of his counsel. Appellant offers no *rational* explanation why, after hearing his victim's testimony at trial and concluding his counsel did not sufficiently investigate his case, he continued to assure the military judge *both* that his victim was incapable of consenting at the time of the offenses *and* he was fully satisfied with his counsel. Accordingly, appellant's assertion that his defense counsel provided ineffective assistance lacks merit.

## CONCLUSION

After considering the entire record, the parties' briefs, and those matters personally raised by appellant pursuant to *Grostefon*, the findings of guilty and the sentence are AFFIRMED.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

5